## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 3:09cr117 (MRK) |
| | : | |
| EUGENE ARGRAVES | : | |

## RULING AND ORDER

On May 20, 2009, Defendant Eugene Argraves was indicted on one count of a twenty-three count Indictment filed against 33 individuals on the basis of their alleged involvement in federal narcotics trafficking violations.  In particular, Mr. Argraves was charged with conspiracy with intent to distribute, and to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii).  After his arrest on May 27, 2009, the Government moved to detain Mr. Argraves pending trial.  Magistrate Judge Thomas Smith conducted a detention hearing on June 4, 2009, at the conclusion of which he ordered Mr. Argraves detained on the basis of his danger to the community.

On June 4, 2009, Mr. Argraves filed a Motion for Revocation or Amendment of Detention Order [doc. # 236], seeking this Court's *de novo* review under 18 U.S.C. § 3145(b) of Magistrate Judge Smith's Order of Detention and challenging Magistrate Judge Smith's finding that the Government demonstrated by clear and convincing evidence that he should remain detained pending trial because of his dangerousness.  The Court held oral argument on June 23, 2009, and shortly thereafter issued a lengthy ruling denying the motion on the grounds that Mr. Argraves presented a danger to the community and that the conditions of release proposed could not reasonably assure the safety of the community.  *See* Ruling and Order [doc. # 336]; *see also* 18 U.S.C. § 3142.  However,

1

the denial was without prejudice to Mr. Argraves's right to reapply for pretrial release if he could propose additional conditions to address the Court's concerns. *See* Ruling and Order [doc. # 336] at 19. The Court assumes familiarity with its ruling.

Mr. Argraves took the Court up on its offer and filed a renewed Motion for Pretrial Release [doc. # 560], in which he proposed several additional conditions of release[1] – specifically "(1) confinement to defendant's home, unless the Court permits employment, where visitors are restricted to immediate family members and defendant's fiancé; (2) phone calls are restricted to attorneys, pretrial services, and medical professionals when necessary; (3) Government may install a device to monitor calls (except those with counsel); and, (4) agreement for defendant to contact pretrial services once a day." Mot. for Pretrial Release [doc. # 560] at 2-3. Mr. Argraves also proposed that he would bear the cost of these measures. The Court held a hearing on December 28, 2009 to consider the renewed motion, which the Government and the United States Probation Office opposed.[2] After considering the parties' arguments and acknowledging that the question posed was a close one, the Court concluded that the conditions proposed by Mr. Argraves would reasonably assure the safety of the community. *See* 18 U.S.C. § 3142. As a consequence, the Court orally granted Mr. Argraves's motion subject to the parties negotiating the precise contours of the

---

[1] These conditions are in addition to the conditions initially proposed by Mr. Argraves, including: (1) having family members post equity in their homes and co-sign for a bond, (2) electronic monitoring, (3) a curfew between 9:00pm and 7:00am, (4) home confinement, (5) unannounced searches of his home by the Drug Enforcement Agency (DEA) and the United States Probation Office (USPO), (6) surrender of his passport, (7) travel restrictions, (8) an agreement not to acquire any mode of cellular communication, and (9) forfeiture of the bond if he were to commit another crime while on release. *See* Ruling and Order [doc. # 336] at 15-16; Mot. for Pretrial Release [doc. # 560] at 2.

[2] Unfortunately, the Government declined to file a written response to the motion, and thus the Court entered the hearing armed only with Mr. Argraves's side of the argument.

2

conditions of release.

Pending before the Court is the Government's Motion to Reconsider Defendant's Pre-Trial Release [doc. # 639]. Specifically, the Government argues that the proposed conditions "do not reasonably assure the safety of the community, are extraordinary and beyond those contemplated by the Bail Reform Act [of 1984, 18 U.S.C. §§ 3141 *et seq*.,] and set a precedent where otherwise extraordinary conditions are made available to those with the financial means to pay for the imposition of such conditions." Mot. to Reconsider Def.'s Pre-Trial Release [doc. # 639] ("Mot. to Reconsider") at 1. For the reasons that follow, the Court is largely convinced by the Government's arguments. Therefore, the Government's Motion to Reconsider Defendant's Pre-Trial Release [doc. # 639] is GRANTED and the Court DENIES Mr. Argraves's Motion for Pretrial Release [doc. # 560].

## I.

The Court's prior Ruling and Order [doc. # 336] contains a detailed discussion of the law governing a defendant's release pending trial, and the Court will not reiterate that discussion here. It suffices to say that "[b]ecause the law generally favors bail release, the [G]overnment carries a dual burden in seeking pre-trial detention." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). First, the Government must show that the defendant presents a risk of flight or is dangerous to another person or the community. If it satisfies this first requirement, the Government must then demonstrate that no condition or combination of conditions could reasonably assure the defendant's presence in court or the community's safety. *Id*.; *United States v. Dillard*, 214 F.3d 88, 91 (2d Cir. 2000). The Government does not argue that Mr. Argraves is a flight risk, but only that he presents a danger to the community. Where, as here, the Government proceeds solely on the basis of

3

dangerousness, it must satisfy its burden by clear and convincing evidence. *See* 18 U.S.C. § 3142(f); *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995).

In its earlier Ruling and Order [doc. # 336], the Court determined, based on the factors enumerated under 18 U.S.C. § 3142(g) as well as statutory presumption of dangerousness under § 3142(e),[3] that the Government had met its burden of showing that Mr. Argraves presents a danger to the community.  As made clear to the parties during the December 28, 2009 hearing, the Court is not willing to revisit this dangerousness determination.  In fact, as the Court stated on December 28, the Government's case against Mr. Argraves has actually been strengthened by several guilty pleas that have been entered in the case.  Having considered Mr. Argraves's brief at length, nothing in the brief suggests that the Court's decision on dangerousness was in error.

Therefore, the only question before the Court is whether the conditions of release proposed by Mr. Argraves will reasonably assure the safety of the community.  In making this determination, the Court must consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the

---

[3] Because Mr. Argraves was indicted for conspiracy to distribute five kilograms or more of cocaine, which carries a mandatory minimum sentence of no less than 10 years' imprisonment, *see* 21 U.S.C. §§ 846 & 841(b)(1)(A)(ii), he is subject to a rebuttable presumption of dangerousness under § 3142(e).  However, Mr. Argraves only has a burden of production in response to the presumption; the Government retains its burden of persuasion to establish by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)).  Where a defendant proffers evidence in response to the statutory presumption under § 3142(e) that no condition or combination of conditions will reasonably assure the safety of the community, the Court weighs the statutory presumption along with the factors set forth under 18 U.S.C. § 3142(g) to determine whether the Government has shown by clear and convincing evidence that the defendant's pretrial detention is necessary.  *Rodriguez*, 950 F.2d at 88.  Thus, although Mr. Argraves has rebutted the presumption under § 3142(e), "the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant."  *Id.*

offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against [Mr. Argraves];

(3) the history and characteristics of [Mr. Argraves], including –

> (A) [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, [he] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by [Mr. Argraves's] release.

18 U.S.C. § 3142(g). As the Court noted on December 28, the Court must carefully balance Mr. Argraves' presumption of innocence against the need for the community to be protected. Achieving that proper balance requires judgment borne of experience.

## II.

As an initial matter, Mr. Argraves argues that the Government has failed to offer any proper grounds for reconsideration. *See* Obj. to United States' Mot. to Reconsider Def.'s Pre-Trial Release [doc. # 655] ("Def.'s Obj.") at 2-4. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, the Government has made the Court aware of relevant case law that it had failed to consider when it made its oral ruling from the bench on December 28. This is enough to satisfy the standard for reconsideration. *See id.* (affirming the district court's decision to reconsider its earlier ruling

where in light of the "introduction of additional relevant case law and substantial legislative history").

Mr. Argraves also points out to the Court that, relying on the Court's December 28 oral ruling, his family has spent approximately $2,000 in order to satisfy the conditions of his release. As discussed in more detail towards the end of this ruling, though it will offer little consolation to Mr. Argraves and his family, the Court is extremely sympathetic to this argument and sincerely regrets having caused his family to spend such a significant sum of money.  However, Mr. Argraves was made aware of the Government's intention to file a motion for reconsideration, and could have waited for the resolution of such motion.  Furthermore, in deciding the question of pre-trial detention the Court is constrained by the Bail Reform Act – the money spent by Mr. Argraves's family is simply not a factor that the Court can consider in making its determination.

### III.

In its brief, the Government argues first that the conditions proposed by Mr. Argraves are not contemplated by the Bail Reform Act.  The Court does not necessarily agree with this assertion by the Government, as the Act gives judges significant latitude in determining what conditions to impose, *see* 18 U.S.C. § 3142(c)(1)(B)(xiv), and the Second Circuit has upheld the imposition of conditions similar to those proposed by Mr. Argraves, *see Sabhnani*, 493 F.3d 63.  However, the Court need not decide whether the Bail Reform Act authorizes the conditions Mr. Argraves proposes, because, upon reflection, the Court  agrees with the Government that, whether or not the conditions proposed by Mr. Argraves are authorized by the Bail Reform Act, to release him based on such conditions would create an unfortunate precedent.  Specifically, it would allow for the creation of "private jails" for those who could afford it, which "would at best elaborately replicate

6

a detention facility without the confidence of security such a facility instills." *See United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (internal quotation marks and citation omitted); *see also United States v. Agnello*, 101 F. Supp. 2d 108, 115-16 ("A defendant who has demonstrated his unsuitability for pretrial release . . . should not be able to buy his way out by constructing a private jail, which cannot provide the same assurance of safety to the community that Congress sought to secure in the Bail Reform Act.").

Furthermore, even were Mr. Argraves to pay for the cost of the proposed conditions, in order to reasonably assure the safety of the community, the Government and Probation would still face a significant burden in terms of employee time and other resources. *See Orena*, 986 F.2d at 632-33 ("Safety of the community will be assured only if the government provides trustworthy, trained staff to carry out the extensive monitoring of homes, telephones, and travel that would be necessary to ensure compliance with the conditions of bail. If staff were not provided, protection of the community would be left largely to the word of Amato that he will obey the conditions. We find nothing in the Bail Reform Act that requires the government to staff home detention centers or allow dangerous defendants to be at large based upon their promise not to violate conditions of bail."). The Government and Probation might be able to bear this cost for Mr. Argraves, but other defendants will undoubtedly request release based on the same or similar conditions. The burden on the Government and Probation could rapidly become unmanageable. *See id*. at 633 ("Moreover, Amato is sufficiently dangerous that we can safely say that if he is entitled to the stipulated conditions of bail, every defendant of means would be entitled to release on similar conditions. Given the fact that numerous defendants might at any time be at large under these conditions, monitoring might well require extensive staffing.").

7

Finally, upon further reflection, the Court also concludes that even with the additional conditions of release proposed by Mr. Argraves, the Court would in the end still have to rely on Mr. Argraves's word that he will not commit another crime. As the Second Circuit recognized in *Orena*, a case that also addressed whether a defendant's proposed conditions would reasonably assure the community's safety, "electronic surveillance systems can be circumvented by the 'wonders of science and of sophisticated electronic technology,' and . . . monitoring equipment can be rendered inoperative." *Id*. at 632. A monitoring device on Mr. Argraves phone would likely be meaningless given that Mr. Argraves would be aware of its existence; and there is little the Court could do to enforce a condition that he not acquire a cellular communication device. Furthermore, absent 24-hour surveillance (which the Court is not proposing), there is no guarantee that Mr. Argraves would limit his visitors to those approved by the Court. A requirement that Mr. Argraves contact pretrial services on a daily basis would be nothing more than an inconvenience. *See United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985).

In short, these conditions would not prevent Mr. Argraves from continuing to traffic in drugs were he inclined to do so, and thus they would do little to alleviate the particular dangers to the community that would be present if Mr. Argraves were released. *See id*. at 632-33, *Ferranti*, 66 F.3d at 544. As the Court explained it its prior Ruling and Order [doc. # 336], it is unwilling to take Mr. Argraves's word to the possible detriment of the community. *See Rodriguez*, 950 F.2d at 89; *United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985) ("[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.") (internal quotation marks and citation omitted).

8

**IV.**

During the December 28 hearing and in his briefs, Mr. Argraves has argued that his release

pending trial is necessary to allow him to prepare his defense and guarantee effective representation

by counsel.  Mr. Argraves is currently detained at the Wyatt Detention Center ("Wyatt") in Rhode

Island and his counsel is located in New Haven, Connecticut – a distance of approximately 110

miles.  The Government has agreed to leave discovery materials with Mr. Argraves's counselor at

Wyatt to facilitate communication with his counsel.  *See* Mot. to Reconsider [doc. # 639] at 2.  The

Government also points out that Wyatt allows weekend visits and that the U.S. Marhsals Service is

willing to transport Mr. Argraves to New Haven for attorney-client meetings with advance notice.

*See id.*  Nonetheless, Mr. Argraves argues that communication with his counsel is impaired by his

detention at Wyatt.  *See* Def.'s Obj. [doc. # 655] at 5-6.

The Court is sympathetic to Mr. Argraves's concerns, and acknowledges that his detention

at Wyatt imposes some obstacles to his preparation for trial.  That is why each member of the

District Court has repeatedly asked federal legislators to build a detention facility in Connecticut.

But this level of inconvenience does not amount to a denial of effective assistance of counsel.  *See*

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[W]hen an institutional restriction infringes a specific

constitutional guarantee . . . the practice must be evaluated in the light of the central objective of

prison administration, safeguarding institutional security."); *Benjamin v. Fraser*, 264 F.3d 175, 187

(2d Cir. 2001) ("[P]rison regulations restricting pretrial detainees' contact with their attorneys [are]

unconstitutional where they *unreasonably* burden[] the inmate's opportunity to consult with his

attorney and to prepare his defense.") (internal quotation marks and citation omitted, emphasis

added); *United States v. Lucas*, 873 F.2d 1279, 1280 (9th Cir. 1989) ("Lucas's pretrial detention in

9

a facility located two hours distant from the place of his trial did not prevent all communications between client and counsel. Lucas and his counsel were free to communicate by telephone; alternatively, Lucas's counsel could easily endure the inconvenience of a two-hour drive to Phoenix. . . . We thus believe that his detention in the facility located in Phoenix rather than the one in Tucson did not amount to the actual or constructive denial of the assistance of counsel . . . ."); *United States v. Echeverri*, No. 91-CR-885 (DRH), 1992 WL 81876, at *2 (E.D.N.Y. Mar. 31, 1992) ("Accepting Echeverri's recitation of the rules regarding attorney access to clients at Otisville, the Court does not find that those restrictions are unreasonable in light of the need to balance the rights of defendants against the administrative and security needs of the facility. Furthermore, . . . the distance to the Otisville facility [of 200 miles] may inconvenience defense counsel, but it does not deprive defendant of his right to a reasonable opportunity to consult with counsel."). Pre-trial detention will always interfere with preparation for trial to some extent, but the Bail Reform Act clearly contemplates this problem and allows for detention provided that the defendant is "afforded reasonable opportunity for private consultation with counsel." 18 U.S.C. § 3142(i)(3).

The Court finds that the conditions of Mr. Argraves's detention at Wyatt do not unreasonably interfere with his opportunity to consult with his counsel in this case. That said, if Mr. Argraves' attorneys would like him brought to New Haven in order to prepare his defense, the Court will enter such an order upon request.

## V.

Finally and most important, the Court must apologize to Mr. Argraves and his family for giving them the false hope of release. Mr. Argraves family was present *en masse* on December 28, and it was apparent that the family – who clearly love and believe in Mr. Argraves very much – were

seeking to assure the Court that they would ensure that Mr. Argraves did not harm the community. As it did with the initial motion for release, the Court should have taken the matter under advisement rather than ruling orally at that time. In truth, this Court has little experience with bail motions such as this as they are usually handled by the Magistrate Judge, and the Court acknowledged that fact at the argument. Particularly when a court has little experience with a subject, it should take the matter under advisement in order to study the question and consider the issues at length. In failing to do so, the Court erred, and greatly so. That is the Court's fault, not the fault of the parties or Mr. Argraves's family. As Justice Felix Frankfurter once said, "Wisdom often never comes, so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.*., 335 U.S. 595, 600 (1949). The Court understands full well that Mr. Argraves's counsel would choose a different word than "wisdom" to describe this decision and that such aphorisms are no solace whatsoever to Mr. Argraves and his family. For that the Court is truly sorry. But, in the end, the Court has an obligation not only to Mr. Argraves and his family, but to the community at large, and that obligation is to get tough decisions right. Sometimes getting it right requires the Court to admit that its initial inclinations were wrong. That is the case here.

## VI.

Therefore, after considering the factors set forth under 18 U.S.C. § 3142(g), and according due weight to the presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will reasonably assure the safety of the community if the Court ordered Mr. Argraves released, the Court GRANTS the Government's Motion to Reconsider Defendant's Pre-Trial Release [doc. # 639] and DENIES Mr. Argraves's Motion for Pretrial Release [doc. # 560].

11

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: January 22, 2010.**